Okay thank you very much. All right we're going to go on to our third case of the day that is number 21 1168 Kendalynn Jackson versus the Illinois Department of Commerce. Hello Mr. Baker. Good morning Your Honor. May I please the court Mr. Rush. My name is John Baker and I represent the appellant Kendalynn Jackson in this proceeding. We are here today to ask the court to reverse a grant of summary judgment and I and I want to I think I need to clear something up initially. When we filed our complaint we did name the department as a defendant but that was on an Illinois Ethics Act claim. We are not pursuing that here on appeal today. So the defendants are the two individual defendants on the 1983 claims that we are here for today. So even though the I guess the title has the department in it they are technically I think not a part of these proceedings. Kendalynn Jackson worked for the Department of Commerce and Economic Opportunity for a number of years. In 2016 she received multiple performance evaluations all at the same time for three specific terms. When she received those evaluations they were they were fairly average but the last one gave her objectives for the previous year and told her what her objectives were. One month later she receives an evaluation and that evaluation evaluated her on the objectives that she had never received and the evaluation was about as bad as an evaluation can be for a for a governmental employee. It had every I were rated as unacceptable and Illinois law is pretty clear that personnel evaluations serve a very important point and in our brief we've we've outlined what the state of Illinois uses evaluations for and the process and what they are supposed to be used for. There's a there's an interactive process between the employee and their supervisor to go over this so that an employee has an understanding of what is expected of them and then that they can work towards satisfying those expectations. Here there's there's no question everyone acknowledges Jackson could not have met her objectives because they were never given to her and she didn't know what they were and so she gets this evaluation. Three days or no excuse me about three weeks later she is notified that she is going to be suspended for a period of seven days and there were there were two charges that were that were brought against her to support that disciplinary action. The first of those and again these are detailed in both sides briefs but they that she engaged in unprofessional conduct when she spoke with a customer. The second one was that she used unprofessional behavior with her supervisor. Now Kendall and Jackson the the testimony on those two points came from two people Miss Jackson's supervisor and Miss Jackson. They both paint very very different views of what happened in both of those situations. And when you are discussing that if you would be kind enough Mr. Baker to please help us out by discussing what record evidence there is to support the inference that either of the two adverse employment actions that you know have identified can be linked to Miss Jackson's race or gender. Is it just the come here incident and the girl reference or is there more that is in the record? I believe that there there is your honor for starters there is a a divergence here from what state policy is supposed to be. The protocol of the state of Illinois is that these evaluations are supposed to serve a purpose and and they don't. And so this court has ruled in a that when a an employer abandons its policies and procedures that can create an inference of a discriminatory motive. So that's that's one piece. The statements the referring to her as a girl and again Kendall and Jackson's description of the way that she was treated by Mr. Denny very very different than Mr. Denny's descriptions of that. You know he he says he was just pointing to a sign out of seat. She says he's yelling pointing to her in a very derogatory fashion to come sit down. Those are those are two very different things and I think that the the inferences that can be drawn there are that those were that those were quite derogatory. Once Miss Jackson attempted to speak to her supervisors about her evaluation she was told to leave the about it. And you know if you if you look at the there's no I suppose Judge Rovner there's no direct evidence. There's nothing that says this was race this was gender and and we did not use the McDonnell Douglas burden shifting methodology. That's that's that's correct. But when you when you look at the totality of the circumstances and I and I think particularly with the seven-day suspension you know when you when you combine the performance evaluations with that and and when you you look at the the pattern of improper treatment I believe that there is an inference there that can be drawn. And we certainly have identified a range of behaviors that are consistent with the notion that she was being undermined maybe isolated and treated unfairly in the workplace. I mean I'm going to grant you that but that doesn't necessarily show us that the source of the animus was her race or gender and that's what I'm looking for. Tell me is it your understanding of your burden here to show that there are facts from which a jury can infer that race or gender was really the reason for her suspension or do you have the option alternative of showing that there are facts from which a jury can infer that her supervisors were lying about their reason for her suspension. That was pretext. Do you understand? I do and I think both of those actually fall together. First of all is our is our standard of proof and the question is would a jury looking at all of this evidence be allowed to permissibly infer that there was discriminatory animus here. So that's that's our standard. The question is when you look at a employer who is giving phony answers and false answers and deviating from a the policies and procedures that are set out by in this case Illinois law that suggests that the justifications that they're providing are not accurate. What's the record evidence of the phony or false answers? Well I think that when you look at the evaluations they have said that that this that these were accurate. They were not. We have a lengthy record disputing what was said in there but even more importantly when you go to the suspension the justifications that were used for the suspension are based on facts. Denny says that Miss Jackson was very very rude to him. She was assertive. She was loud. She was yelling at him. She was belligerent pointing at him. She disagrees with that. She says no I was very calm. I was I approached it in a very reasonable and professional manner. So here we have two separate facts. The district court looked at that and said well those are just two different interpretations of the facts. Well we're entired I think because we're the ones the non-moving party to the to accept the facts that are being offered by Miss Jackson to the extent that they diverge from those of Mr. Denny. So if we accept Miss Jackson's facts on that we it shows that they're not being truthful about the justifications that they are utilizing for the suspension that they that they handed down for her. So I think that that becomes I think that that becomes a divergence and not not necessarily being truthful in their justifications for why I know I'm down to about a minute. Previous counsel said time flies and it certainly does when you're up here. So I will if I could save the remainder from my rebuttal time unless the court has any more questions. No thank you thank you. All right. Mr. Rush. Hello Mr. Rush. Good morning your honors. Good morning. May it please the court. I am Assistant Attorney General Caleb Rush appearing for defendants appellees Illinois Department of Commerce and Economic Opportunity, Victor Narousis and Ben Denny. We're asking the court to affirm the grant of summary judgment based on well-established principles. First and foremost that a plaintiff claiming employment discrimination must produce evidence that she suffered an adverse employment action because of her membership in a protected category gender or race in this in this case. We're not talking about a mere violation of a policy. A mere violation of a policy is not is not a constitutional violation. The cases that talk about violation of policies also involve additional evidence pointing to discrimination such as internal inconsistencies, self-contradictions by the employer or differential treatment none of which we have. We have suspension without pay here. We do have a suspension without pay and we acknowledge that that is an adverse employment action because unlike the evaluations you know that's a that's a great harm it's a it's a week without pay but the problem with you know the reason why that does not add up to a discrimination claim that can survive summary judgment is with that and with the evaluations there's no record evidence pointing to race or gender as a factor. Tell me this but with respect to that suspension if we were to assume the truth of Miss Jackson's assertion that she wasn't rude or aggressive or yelling or unprofessional with either Mr. Rothart or Mr. Denny and then why does that not support an inference that the defendants didn't honestly believe she was rude and so you know so forth I mean I I understand that different people can have different subjective perceptions of the same behavior but this is summary judgment. How would a plaintiff ever get to trial if the defendant can always say well I honestly thought you were shouting and you said you wasn't shouting and you can't prove that I didn't think so? Thank you judge for the question I appreciate it it correct a matter stated by opposing counsel just a few minutes ago. Judge I agree the question is the employers honest belief. The decision-makers on the suspension did not include Mr. Denny who is alleged to have made these comments which I will note did not specifically involve race or gender or another decision-makers. The decision-makers were Mr. Narousis, Human Resources, the director's office and and as you said judge the question is what is the decision-makers honest belief? Here is where their honest belief came from. Starting in 2015, Narousis heard from the general counsel and from someone in the director's office that was Emily Monk raising concerns about Jackson's timeliness, accuracy, and comportment. Then we have other people in the business development office Melody Sanderfield who is sometimes referred to as Melody Wilson in the deposition testimony and Mark Gauss concerned for their safety around Jackson. These are reported to Narousis. Mark Gauss also reported to HR and maybe also to Narousis about Jackson verbally abusing a temporary employee named Ashley Wonderling. We have an email from Misha Fisher who was previously in the director's office to Narousis talking about interns being aware of difficulties working with Jackson. But when Miss Jackson is suspended for seven days without pay the grounds specifically asserted were that she was rude and loud and yelling on this call with Rothberg and two that she was agitated and unprofessional in her response to this memorandum that was edited by the legal department. The grounds for the suspension did not refer back to these other pieces of information that you are providing now. The the pre-disciplinary notice did refer and I think this might have been document 20-9 did refer to a consistent pattern of unprofessional behavior. Not only that but when the decision-makers are assessing these two catalyst incidents and I absolutely agree the two incidents in October were the decision about about this suspension without pay for a week they're entitled to consider the full facts that they've been made aware of over the course of Miss Jackson's employment. And here's a here's a key point that I that I want to clarify. They on these incidents they were not just dealing with Miss Jackson versus Mr. Denny. They were dealing with on the one in on one incident Denny and Mr. Rothhart's communication to Naruse's about this phone call. And then on the other incident we had John Glazier and Matt Jennings both telling Naruse's that they this is the conversation about the edited memo that that describing Jackson is rude and uncontrollable and they said that her behavior created a hostile work environment. So so even on those two incidents it was not just two witnesses a he said she said. Of course they also heard previous concerns from the IT department and the head of IT asked not not for his people to have to work with Jackson at all. And then there was also the email from the temp staffing agency the manager there a gentleman named Rick Lenhart talking about a different temporary Joyce Lawrence different temporary employee from the one previously reported as suffering. Are you saying there's no factual dispute at all or just that you all have more facts? Neither. I'm saying that the question before this court is the decision makers honest belief and the question and so it's not it's the the issue before this court is not whether there was some factual dispute it's whether there was a material factual dispute. For instance in the Widmar case cited in our brief that there can be all kinds of factual disputes but they have to be material and we don't have evidence on the record showing that these decision makers did not honestly believe that they concluded that Ms. Jackson was behaving in an I want to I want to mention a few other reasons why the connection to Mr. Denny is particularly attenuated. First of all the actual deposition testimony about Mr. Denny's statements does not does not lead to a reasonable inference of race based or gender based animus. We have testimony that in a hostile or to come here and he points down. We have and then about the girl comment she says she doesn't even remember it but it may have been Denny. But even if we assume even if we assume that these things happened the way that that that Jackson says in the briefs then we have a problem that they're not connected to the time of the adverse action. They're not connected to the process of the adverse action. Denny wasn't a decision-maker. There's no attempt to lay out a cat's paw theory which couldn't work anyway because these decision makers didn't singularly or wholly depend on Denny's accounts. So so the the situation with Denny is very attenuated. One way to consider it is does the Seventh Circuit want to shift from established precedent and have a federal district court trial on discrimination claims every time an employer who is a decision-maker points at at a subordinate and says come here and points down or or six months before a decision calls calls subordinate a boy or a girl. You know we certainly aren't suggesting that that's appropriate workplace conduct but it but there's no case suggesting there's no case suggesting that that's a violation of a constitutional right or gives rise to an employment discrimination claim. With that I'll rest on our briefs if the court doesn't have any further questions and we will ask the court to affirm the Mr. Baker. Let's give Mr. Baker three minutes, please. Thank you, your honor. I do appreciate the extra time. I want to I just want to briefly touch upon Mr. Denny. Mr. Denny was her supervisor. He became her supervisor right when these evaluations came out right when she was suspended. And this is a 1983 claim. It's not a Title VII claim. Mr. Denny is an individual defendant and when an individual causes a deprivation they can be liable under 1983. This is not a Title VII claim. So the question of Mr. Denny's involvement while it might not go to the ultimate decision-makers he's the one who was providing and feeding this information to the ultimate decision makers. So his liability is still there. The other thing that I that I think is striking, they make this whole case about all these horrible things that that Kendall and Jackson supposedly did. People felt like she was in danger. They were in jeopardy around her. That's problematic because why wasn't she ever disciplined for those things? Why weren't those things ever addressed? I mean if she's the way the way they have spun it is that she was absolutely the worst employee in the history of the department but yet there's there's never done about that. She they did they said that Mr. Narousis said he had he began discussing her demeanor with her in 2015. She she filed an affidavit and she said I had one meeting with Mr. Narousis and Emily Monk in 2015. They told me that they had heard negative things about me. I told him that that was the first I had ever heard about that. Being concerned and wanting to take corrective action I asked Mr. Narousis for details so that I could learn from my allegedly deficient behavior and prevent it from recurring in the future. Mr. Narousis failed to provide me with any information that supports this contention. So again where is the communication? Where is this information that she was supposedly this horribly deficient person? We have these issues that all occur right when Mr. Denny becomes her supervisor in 2016. These these evaluations and and then the the suspension and and for those reasons and I and I I understand what Mr. Mr. Rush is saying the court doesn't want to go to a point that anytime an employer's points to the ground that there's a trial but but that is evidence and and if that were the only piece of evidence we probably wouldn't be here but it's not the only piece of evidence. There's the systematic abandonment of the the policies on how to handle these evaluations. Those are those are significant things and the question becomes really can a jury based upon the facts permissibly infer that there was discriminatory intent? That's really what the question is and we believe that there is sufficient evidence for that and we would ask the court to reverse and remand this matter for trial. There are no other questions I'll step aside thank you. And we thank you very much the case is going to be taken under advisement.